On behalf of the people, Ms. Ware, it's good to see you back. I'm sorry about your family loss. Thank you so much, and I do appreciate the extension of that argument. It was very kind of you. Thank you. I'm here this morning, however, representing Freddie Ware. Mr. Ware was convicted of possession with intent to deliver 30 to 500 grams of cannabis. This conviction followed a jury trial. We're raising two claims of error on this appeal. First, that the defendant was denied due process of law when the court caused a critical defense witness to exercise a Fifth Amendment right not to testify as a defense witness. And second, that the prosecutor made improper statements during closing argument. I'd like to get right to the first argument, and if there's time, I'll address the second. In Webb v. Texas, the United States Supreme Court held that the defendant's due process right to present witnesses is violated where the court exercises improper influence on a defense witness, causing that witness to refuse to testify. In our state, we determined whether a Webb due process violation has occurred using a two-part test that was announced in People v. King. That test is, first, whether what the court did could have caused the witness to refuse to testify. And second, we look at whether what the court did, which is generally admonishments regarding the risk of testifying, was somehow improper. To apply the test, it's necessary to consider the facts briefly, kind of a sketch of the facts. And let me direct you right to where I'd like to hear your take. Yes. I think you say in your brief that in some ways you think that these admonitions or this process was more egregious than some of the others that were cited. Can you tell me how? Well, here, what made this egregious here is, first and foremost, the fact that there really was no reason for this person to be admonished of her Fifth Amendment right. She was not at any risk. The reasons that the court gave her for that she was at risk were not well-founded. The court told her originally that there was concern regarding whether she might try. She had pled guilty. The witness had pled guilty. More than 30 days had passed since the entry of the police. So she was not in a position to be able to file a motion to withdraw the police. She never tried to. She never said she would, was thinking about it, and also didn't file a direct appeal. So the court, nevertheless, told her, well, you could file a post-conviction petition, suggesting that she might someday want to attempt a claim of actual innocence. And what the court suggested was that perhaps it would turn out that the way that the cannabis or the substance was tested, that there was a flawed testing method or something. And so then she would have a claim of actual innocence, which, of course, would mean that it wouldn't matter if she testified that she had possessed the substance, which was not cannabis. It just didn't make any sense. So that was not a legitimate complaint or concern. Absent that concern, all that was left was the court was saying, you know, making, made a murky statement right before Phyllis waved to write, in which the court said that this could have an effect on the case that you pled guilty in. And then so there was this notion that she would be open herself to further prosecution. Well, did, I mean, she made two different statements, essentially. And actually your client probably did, too. But Miss Phillips first said that, you know, it was theirs or something. But then in this second statement, not an affidavit, she says it was all mine, wasn't his. So we've got two separate statements. Wasn't he concerned that she might perjure herself if she testified? Well, the problem with the perjury charge is that the first statement was a statement to the police that wasn't made under oath, wasn't attested to. And the second statement, which actually she did make, she had it notarized and she claimed it was attested to. She, that one was the one that it was anticipated she was going to testify consistent with. And even the state presumed that. In fact, the state would have had no reason to be worried about her, you know, testifying otherwise. And the state did all join the court's effort to keep her from testifying. What in particular did the state do? The state suggested that she could be prosecuted for perjury or for obstructing justice or filing a false police report. The perjury thing was, as I say, highly unlikely because in order to prosecute her for perjury, she got on the stand and testified consistent with the affidavit or the quasi-affidavit. The state would, in a prosecution, would have to prove that what she said on the stand was the thing that was untrue and what she said to the police was true. And so, you know, that the perjury took place on the stand because the first statement wasn't sworn or attested to. So it's different from a situation where somebody might, for example, testify one way at a grand jury hearing and then differently at trial, which ironically actually happened in this case. A police officer did that. Nobody admonished him regarding his Fifth Amendment right to remain silent before he basically perjured or admitted that he had made an unsworn statement, which is something to consider here. So she has been singled out. And a similar situation came up in one of the cases we cited, People v. Mancilla. The court there, that was a case where a person who was a witness, a potential witness, who had made one statement to the police, an inconsistent statement to the police, and then was ready at trial to testify as an alibi witness for the defense, and she was informed, among other things, that she could be deported. And the court pointed out, this is not the way we handle prior inconsistent statements to police officers. What we do is we use them for impeachment. Had Ms. Phillips taken the stand, the state could have just impeached her with that statement. And the notion that she would have been prosecuted for perjury was just highly unlikely and ridiculous. The obstructing justice, she really didn't commit obstructing justice, which made her first statement. She actually facilitated a prosecution of both herself and the defendant. And so that really wouldn't be a viable charge. And the last one that the state mentioned, the filing of a false police report, which is actually a form of disorderly conduct, she really didn't do either. But she did, she was arrested, and then the police interviewed her, and she made a statement to the police. And that really isn't a false police report. And then the other thing that we had in this case, which is similar to a lot of the other cases that I cite, is a quantity of kind of a barrage of warnings and admonitions. And they brought in her guilty plea attorney because it was important that she be a management attorney, which is true in these cases. But when that attorney came in, they discovered it occurred to the parties that she was also a PD, so they decided they needed to bring in yet somebody else. And she ended up being counseled by an attorney, Carter, who was unfamiliar with the case and really was only able to reiterate to her what the court had told her. And unlike, for example, in People v. Blalock, where it was a similar commotion, but the attorney that was brought in to consult the defendant did so over time, overnight, and was able to give him good, solid information based on knowledge of the case, here Carter simply said what the court had told Carter was the situation and wasn't really able to help. Well, in Blalock, the judge actually told the witness, potential witness, I think it would be foolish for you to not exercise your right. Yes. I mean, actively trying to discourage him. That's true. And in Blalock, they said that that was improper, but then found that it was harmless because of this period that she was able, that the witness had with the attorney, this overnight consultation. Here, while Judge White did not say specifically, you know, you shouldn't do that, he communicated it between the lines. It was, he certainly made it sound like she had a lot of reason not to testify. Well, regardless of what you want to read between the lines, if you look at Morley v. King, Morley was a case where the judge actually, again, tries to talk, overtly talk the witness out of testifying. I think you might have an overinflated idea of what your testimony might be in this case. Take some time, go talk to your lawyer. And in King, the judge actually improperly recalled the testimony or the statement of facts that was given when the witness pled guilty and then, in a sense, tried to also talk the witness out of testifying. Let me ask you this, considering those cases and then considering also Pantoja, which was a case where the court basically says that while the trial court doesn't have the obligation to advise a witness, it certainly is a discretionary thing that the court can do and should do in some circumstances if the witness is unrepresented. Right? Yes. Tell me how you square our case with those three that I just mentioned. Well, I say that one of the big things in this case that sets it apart, perhaps, is the fact that there really is no Fifth Amendment interest here, particularly. Again, she's already pled guilty. She waived her right to self-incrimination.  It's questionable whether the – I mean, is it really the case that it is – a post-conviction petition based on actual innocence can be filed at any time. It can't be that such a person would never be able to testify in a criminal case as long as they were – after having been convicted of something, as long – you know, concerning that crime, as long as – well, I guess as long as they were incarcerated or under – in custody because of this actual innocence potential claim, which doesn't really exist. In this case, there's no way she could exercise – she could have a claim of actual innocence short of something like this – it wasn't really cannabis idea that the court suggested, which, again, could not be affected by her testimony. So if she can't be further prosecuted on these charges, you know, by withdrawing her plea or whatever, and if she can't be charged with perjury and she can't be charged with obstructing justice or filing a false police report, there's really nothing. She was not placed at risk of further prosecution should she testify. She was not opening herself to prosecution. So that's why this case is different from all the others, and better, I think. Here – was she under subpoena or was she coming in voluntarily? It was an – I'll admit, that was a funny situation. It was a pretrial hearing, and the defense apparently had concern about whether she was going to show up for trial and had subpoenaed her in and then was asking the court – kicked this all off – the defense counsel was asking the court to issue an order making it clear to her that she needed to show up for the trial. And so, again, showing up – she has to show up for the trial, but she's not saying at some point she's not going to show up, is she? No. Which is, I think, what happened in Blalock. The witness did not want to show up, was trying to quash the subpoena. No, I think the defense counsel was being careful is what he was doing here. And in Blalock, was the subpoena issued by the defense or by the state? Probably by the defense. Yeah, yeah. Okay. Even where the King test is satisfied, a due process violation will not be found if it doesn't cause prejudice to the defendant's cause. And in our case, the defendant did testify. And he did his best to explain away all the incriminating evidence against him. I don't know if you need me to go through every single little thing, but had Phillips testified, she could have corroborated all of his explanations and even the heart of the theory of his defense, which was that Phillips did this, but he did not. The only conceivable witness who could have made that claim on his behalf was Phillips. And so the court's abuse of discretion here deterred the only witness who was capable of exonerating the defendant. At the time of Mr. Ware's trial, were they actually still having a relationship or was that over? Because it's not real clear. Yeah, I think they no longer were in a relationship. I also think now, I am talking off the top of my head, I could be wrong about this, but I believe that the trial was going to go forward sooner and was continued after the defense realized that they were not going to have Phillips available as a witness. But there were many other things that came up in between, too, so it's hard to say. But at some point, yes, that relationship did dissolve. We don't know what the effect of that would have been. As to our second argument, if you have no other questions, that is that the prosecutor's improper comments during the rebuttal argument prejudiced the defendant. During the rebuttal, well, during the defendant's argument, the defense counsel argued that Phillips was a drug dealer, but the evidence did not establish that the defendant was. In rebuttal, the state responded by saying that there was the same evidence against the defendant as there was against Phillips. It lists out what that is and then says, if it's good enough for Gabriel Phillips to be guilty, it's the same evidence we've proved him guilty beyond a reasonable doubt to. We think this is improper for three reasons. One is that it interjected facts that were not in evidence into evidence because, you know, the fact that Phillips had been convicted. And it also suggested that she had been found guilty beyond a reasonable doubt by a jury based on the same evidence. The second thing is that such facts are inadmissible. You can't, she's a co-defendant who pled guilty. And in case we decided people need Sullivan and others like it, the whole that a, the fact that a co-defendant pled guilty or was found guilty at a trial should not be admitted as evidence to prove the defendant's guilt. And here she's arguing that it's an indicator of the defendant's guilt. And finally, what she has to say isn't true. Not only is there the fact that Phillips pled guilty rather than have been found guilty by a trial fact, it's also not the same evidence. There was more evidence against Phillips than there was against the defendant. The evidence showed that it was her apartment. She was the one with the lease. She was the one that lived there. It was a much stronger constructive possession case against her than there was against the defendant. And so we find that that was a prejudicial error. We acknowledge that the Feds Council didn't object, but we ask this court to address it as plain error or ineffective assistance. Thank you. You'll have a chance for a response. Thank you. Mr. Jacobs, good morning. I'm Barry Jacobs on behalf of the people. May it please the court and counsel. Excuse me. In this case, under the frailing standards cited by the defendant, the court's comments can only be taken as proper. Even ignoring the first prong of the King standard, that there has to be some sort of, excuse me, showing of causation, that the comments could have caused or caused, actually caused the witness, Phillips in this case, not to testify. Without even arguing that, the comments here were not egregious. They were completely proper. Let me look at Blalock. There, there was a motion to quash a subpoena, and that's what prompted sort of the judge's participation, and then said, well, we're going to give you a chance to think about this, and went away. What prompted this other than this? Would you, was there a request for an order or a subpoena, or how did the judge, she was standing there. She was in front of the judge at that point. What prompted the conversation? It's my recollection that she did respond to a defense subpoena, and appeared in court that morning. And, we're not exactly sure. Did she say she didn't want to be there? Which it was apparent in Blalock, if you want to quash the subpoena, you don't want to be there. To my recollection of the record, it wasn't clear what brought this to the court's attention. However, the salient point is that the court, once it became aware that she was present, and would be offered up for her testimony, the court became concerned about her Fifth Amendment right, and actually continued the subpoena for another day, and appointed counsel to allow her to consider this and allow her to speak to counsel. This case differs from all the cases cited in that the court didn't directly address or threaten Ms. Phillips. It took strides to ensure that her interests were protected. This court has acknowledged, and morally, that the court has to walk a fine line between protecting the rights of the witness and threatening the witness to the extent that it impairs the defendant's due process right. What were the real dangers to her at that point? Or for her at that point? The dangers that were given in court actually were real. Her right to file a post-conviction petition had not yet expired. I think it actually only expired this year. She's not in custody though, right? No, she's not. But she did plead guilty. She received a very favorable sentence of, I believe, 30 months probation. Her plea is not part of the record. And I guess the real danger that the court may have been focused on was if she would have moved to withdraw the plea, if she would have claimed actual innocence in a post-conviction petition, and to do that she would have, as I just said, had to challenge her plea. A testimony that she may have given, accepting full responsibility for this crime, had she later decided to attack her plea in a post-conviction petition, certainly would have presented a danger to a claim of actual innocence. What about the affidavit that she'd already signed? Wouldn't that have some negative impact on a potential post-conviction petition? It certainly would, I believe. And so the real danger here is what? Well, she would actually have been locked in. I mean, she did sign the affidavit, but I think the Edgton case says that the court doesn't have to determine whether there's this actual specific showing that the PC would be successful, only that there's some likelihood or some, the language is very, very. Let me ask you this. If we were to affirm on this issue, would this case then stand for the proposition that any time a witness is called who has pled guilty in the past, within that operative time for a post-conviction, should be admonished in open court and given time to think about whether they want to testify, where they've pled guilty. Would it stand for that proposition? No appeal, no indication of an attempt to withdraw a plea. I believe it's always within the court's discretion. No, no, no. My question is, would this then stand for the proposition that that's the appropriate thing to do? And would prosecutors then be put on notice that, you know, you probably need to bring this to the court's attention and make sure that every witness is in fact admonished? I suppose it certainly could, yes. And I do believe the court already has the discretion, but it would provide guidance. But isn't there guidance out there now that maybe is a bit, well, lack of a better term, more comfortable for trial judges that they have no obligation to go out of their way to do this? Wouldn't that be easier than to go out of their way to do this? Well, as the court has acknowledged, as I said in Morley, there's a fine line that the court walks in advising the witness to protect the Fifth Amendment right versus threatening the witness and depriving the defendant of the right to call through the Sixth Amendment. Perhaps it's a more comfortable standard as it stands. And responding to Justice Ferguson's question, it's the state's belief that, of course, this would impose an obligation but would also provide guidance, yes. Let me just read a very, very brief quote and then ask you to comment on this. In Morley, which is a Second District case, it says, In the case of Barr, the trial court in essence departed from its neutral judicial role and acted as counsel to the witness. It goes on expressing opinions as to the strength of the case against the defendant and the witness and so forth. But if you use that kind of as a criteria, departing from the neutral judicial role and acting as counsel to the witness, do you think that occurred in this case? It's the state's position that it did not. This was not an egregious. This was not in Laylock where it was repeated six times or more. This was when the court became aware of it. The subpoena was continued, appointed counsel. And there was no direct discourse between the court and Ms. Phillips. It was all directed in her presence. However, it was directed through her counsel. There were no threats. There was no supposition by the court about what possibly could happen, what sentence she might receive. So it does depart from Laylock. Doesn't that beg the question? There was no supposition about her potential sentence here because it was already done. Doesn't that sort of undermine that argument? The supposition about what she says about it? There was no supposition by the court here about her potential sentence. I did not mean to indicate her potential sentence. I meant to indicate there was no supposition about whether or not she risked something by testifying, which was the case in these other cases where the court departed from the role, the neutral role, and actually. Are you saying that there was no risk here? No. There was obviously risk in response to the justice's question. There was a risk that she may have blown her opportunity or her ability to claim actual innocence by filing a post-conviction petition. She also put herself up to obstructing justice, at least as the state sees it. What did she do to obstruct justice? In this hypothesis, what did she do? Well, I believe this is actually in front of me, but she obstructed the prosecution of the defendant or would have obstructed the prosecution of the defendant if she testified inconsistently with her statement to the police. And that's, of course, a call that Winnebago County, the prosecutor, would have made. In the defendant's brief, she makes very little of the fact that this case, the timing of it was that in March she pled guilty. And the evidence, we don't have it in front of us, but we know that she had assumed responsibility and the defendant had assumed responsibility. In fact, on the night of the arrest, the defendant had said, it's all mine. Everything in there is mine. So she received this very favorable sentence in March. I believe in June is when she made the statement that was sworn, June 10th. And this case came up for trial almost a year later. So she had received something and that was in jeopardy, I suppose. Her sentence was in jeopardy. That's a misstatement. She risked, again, the post-conviction claim and the obstructing justice charge, I guess, would come into play if the state could show that her statement was false. You know, post-conviction has been mentioned a couple of times, and that's actually what the judge mentioned in the case. But as I read the post-conviction act, it has to be a person imprisoned in the penitentiary, and she's on probation. And I don't know that you can explain what he was thinking at the time. I don't mean to put you on the spot in that fashion. But it seems to me that while other possible post-judgment proceedings could have come into play, a post-conviction petition wouldn't even have been an option. Not at all. The post-conviction, her ability to file that post-conviction petition didn't expire until three years after the conviction, which was in March of this year, I believe. Had her probation been revoked during that period of time, she certainly would have been in the penitentiary. And it's the state's position that that's the risk that she would have run had she testified that she was solely responsible for possessing and intended to distribute this cannabis. Well, that's another assumption that may not be correct. If her probation had been revoked, she most certainly would have been in the penitentiary. I can remember one or two times, maybe even more, when somebody's probation was revoked in front of me and we created a new period of probation. That's another possibility, but she could have gone to prison. She could have. You said she would go. I didn't mean literally, but she could have gone to prison, and her right to file a post-conviction petition would have matured, I suppose. What about the argument, the closing argument? With regards to the closing argument, it's a bit of comedy. It's the state's position that the argument was not improper. The comments made during the argument were not improper. The comments were made in rebuttal here, and it's the state's position that they were invited by defense counsel. Defense counsel admitted that the evidence was sufficient to find Ms. Phillips guilty. There was no statement by the prosecutor in rebuttal saying that she had been found guilty, she had gone to trial. The only statement was that defense counsel admits the evidence is good enough to find Ms. Phillips guilty. It's therefore good enough to show that the defendant constructively possessed and was accountable for the drugs that were found in the house. This argument should be considered waived. It was never raised in the motion for a new trial that was brought by the defendant, and the evidence here is certainly not close. If we look at it like what the evidence showed, whether or not the defendant lived in that home, that might be. It was possibly close whether he lived there, but the facts speak for themselves. When the police arrived, they saw Ms. Phillips on the porch. She ran into the house. They felt that their presence had been—the announcement of their presence had been compromised, and they battered the door. She and the defendant were found upstairs in the southeast bedroom, where the majority of the drugs packaged for sale were found in addition to a shaving kit and various other items. So whether or not the defendant lived there, he certainly had knowledge and control over the premises and those drugs that were found. But isn't the question not whether or not there was sufficient evidence to convict Phillips, but whether or not it was the same evidence? She was also in the same room. Wasn't there much more evidence against that witness than there was against the defendant? Her name, as was his, was on the mailbox. She apparently had a lease on the property, but they were in a dating relationship at the time, and his mother admitted that he sometimes stayed there, I believe. Whether or not he lived there is, again, not the inquiry. The inquiry is who had control or possession and control of those premises and the drugs. He was in the house when the police arrived. It's unclear where, but he was found. So the evidence against Phillips and the evidence against the defendant was exactly the same? Basically, yes. Okay. If he hadn't been there, we still have his name in certain places. We have his shaving kit, and we have a coat that is a leather coat. Would it have been any different if he hadn't been there? Wouldn't the state have pursued the same theory, that it was just fortuitous he happened to not be there at that time, but it's obvious that he lived there and, therefore, he had control? Yes, it's possible the state could have pursued that. However, the evidence was strong, very strong in this case. He was present in the same room where the drugs were found, and that's apparently where Ms. Phillips ran when she left the porch. But she didn't testify that the only reason he ran in there is because he wondered why he was upset because she was threatened maybe not to testify. So, I mean, we're kind of going around in a circle here, aren't we? In terms of the closing argument? Well, maybe this was all the state could come up with at that point because of certain other things, but, I mean, we've got there are allegations of not just one but a couple of things happening here, and how many things, I guess, does the state believe we should consider all of these independently or can we make sort of a snowball in order to determine how this case should be decided? I believe that the state believes that this should be considered independently, as I argued in the first point. The comments, sorry, that's the second one. The admonitions were proper in this case. The court walked a fine line, but it didn't depart from its neutral role. It didn't threaten the witness in all of the cases that were cited. There was some sort of threat or direct, there was supposition about what the risk might be to the potential witness, and that's a separate inquiry from the second point, which, as I said, the evidence was not closed. This could be found to have been waived. The comments were proper and invited. There was no statement that Ms. Phillips had been found guilty or convicted. It was only that the evidence, which defense counsel had argued, was sufficient to find Ms. Phillips guilty. If that evidence was also sufficient to find the defendant guilty, it is virtually the same evidence, the same asset you affirmed the defendant's conviction. Thank you. Thank you, Mr. Jacobs. And Ms. Hamill. Just a few things. Regarding, first of all, regarding whether or not you can file a post-conviction petition while you're on probation, there is a Supreme Court case that a lot of this acknowledges that you can. I cite it in my brief at page 22 of the opening brief. I think it's Carrera. It's probably for the reason that you say that your probation can be revoked and you can end up in prison during the probation period. As far as how this whole discussion began about Phillips' rights, the court did start it, did initiate it completely. It was the very first thing said on this topic was, isn't there a concern about, or are there concerns about Fifth Amendment rights? It is true that most of the conversation was not between the court and Phillips directly. It was actually worse, though. While Phillips stood there, there were four attorneys and a judge all, and they were bringing in one more attorney and one more attorney, so it accumulated, all passionately discussing whether or not she was putting herself at dire risk of having a terrible constitutional thing happen, an unconstitutional thing happen in her life. The court itself, when the court did address her at the end of all the discussion and elicited her decision not to testify, the court said to her, you've spoken to the attorney I pointed, that's Carter, who didn't really know about the case, and you understand that you have the right under the Constitution of the state of Illinois, the United States Constitution, not to testify because what you say in a hearing could have an effect on your case, which you pled guilty to. Maybe in the future you might wish to file what we call a post-conviction matter, and since you were involved in this incident, as I understand it, if you testify inconsistent, you could be charged with another offense. Do you understand that? So that's pretty strong language by the court directly to Phillips, who says virtually nothing during this whole discussion. In a lot of the other cases, the witness for a while is saying, I understand that, I still want to do this. Here, Phillips stands there while all these professionals talk about her rights and then ends up deciding she doesn't want to take the risk, which is understandable, I think, but it's probably because of what she was subjected to by the court. Do we know, I'm going to go on to the next issue, the argument. Do we know what evidence was, what the statement of facts was upon which Ms. Phillips pled guilty? We don't. We don't. However, people who were present at her plea hearing were in the courtroom, and nobody said anything. The state has never said that there was something in the factual basis that she stipulated to that would give rise to a perjury charge. They focused only on these statements. So when we have an argument at the end, it's the same packaging, the same place, the same this, the same that. We don't, how do we know it's the same? Is that the problem maybe with the argument as you're considering it, that we don't know it's the same? We know we're at the same house, the same box. But beyond that? Well, yeah, there could be even more evidence against Phillips. That's true. We wouldn't know that. But we do know that, you know, to the extent that there is an overlap, it is not a complete overlap because there is proof that Phillips had the lease. Do we know if Judge White had anything to do with Phillips' plea of guilty? He accepted that plea. Okay. But it was at least a year before, based upon the timeline here? That's right. That's right. Unless Your Honor has any more questions. I do have one quick question. Maybe this was already asked. If it was, forgive me. But when she initially appeared to testify, the witness, was there any objection by the State or any, did the State voice any sort of opinion or objection on it? Well, Phillips originally appeared in court to testify. She appeared only at a pretrial hearing. All this took place then. It was the court that jumped in. So it was totally sua sponte. It was not driven by the State at all? No, it was not, although they did join in. Well, didn't the trial judge look to them and say, well, State, what do you say? Oh, yes, yes. It wasn't that they said, oh, wait, we have an idea, too? That's true. I think you're right about that. So if you have no more questions, we ask for either of these reasons that the defense conviction be reversed and that his cause be remanded for a new trial. Thank you. Thank you, counsel, for argument. The decision will be taken under advisement, and we will stand in a short recess to prepare for our next case.